IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CRAIG MOSKOWITZ, | ) | CIV. NO. 17-00299 HG-RT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| AMERICAN SAVINGS BANK, F.S.B., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANT AMERICAN SAVINGS BANK, F.S.B.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 112)**

Between June 1, 2016 and July 3, 2016, Defendant American Savings Bank, F.S.B. ("American Savings Bank") received 11 text messages from Plaintiff Craig Moskowitz's cellular phone. American Savings Bank sent short confirmation messages in response to each of the 11 text messages from Plaintiff's phone.

Plaintiff has sued American Savings Bank for the receipt of the 11 text messages, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C § 277.[1]

This suit is one of at least fifteen different class action-based lawsuits that Plaintiff has filed alleging violations of the Telephone Consumer Protection Act, and one of the "somewhere between ten and a hundred" lawsuits in which he has been a

---

[1] Plaintiff filed his Complaint "on behalf of himself and others similarly situated." (Complaint at p. 1, ECF No. 1). Plaintiff has not filed a Motion pursuant to Fed. R. Civ. P. 23 and has not otherwise established a basis for him to sue on behalf of a class.

plaintiff.[2]

Plaintiff seeks statutory damages for the 11 text messages American Savings Bank sent in direct response to the text messages that were sent from Plaintiff's phone.

Defendant filed a Motion for Summary Judgment. Defendant asserts that it cannot be liable pursuant to the Telephone Consumer Protection Act because each text message it received from Plaintiff's phone constitutes express consent for it to send singular, confirmatory text messages in response. The Court agrees.

Defendant American Savings Bank, F.S.B.'s Motion For Summary Judgment (ECF No. 112) is **GRANTED.**

## PROCEDURAL HISTORY

On June 23, 2017, Plaintiff filed a Complaint. (ECF No. 1).

On July 19, 2017, Defendant filed a MOTION TO STAY PENDING DECISION OF D.C. CIRCUIT. (ECF No. 14).

---

[2] Deposition of Craig Moskowitz, Mar. 20, 2019, at p. 39, attached as Ex. C to Def.'s CSF, ECF No. 113-6; Exhibits to Plaintiff's Deposition list the following cases: Craig Moskowitz v. KCA Financial Services; Traylor v. United Cash Systems and McDonald's; Craig Moskowitz v. United Cash Systems; Craig Moskowitz v. Knight ATM Corp.; Craig Moskowitz v. Meta Financial Group; Traylor v. Cardtronics and Dunkin' Brands; Craig Moskowitz v. 50.com; Craig Moskowitz v. Pullin Law Firm; Glen Harnish, Daniel Durgin and Craig Moskowitz v. Home Depot; Moskowitz v. North Shore Agency, LLC; Craig Moskowtiz v. Clinilabs, Inc.; Craig Moskowitz v. National Patient Account Services, Inc.; Craig Moskowitz v. Fairway Group Holdings, Corp.; Craig Moskowitz v. Doctor's Associates Corp., Deposition of Craig Moskowitz, Mar. 20, 2019, at pp. 4-7, attached as Ex. C to Def.'s CSF, ECF No. 113-6.

On the same date, Defendant filed a MOTION FOR RULE 41(d) COSTS AND STAY OF PROCEEDINGS. (ECF No. 15).

On July 21, 2017, Defendant filed a MOTION FOR CONTINUANCE OF RESPONSIVE PLEADING AND RULE 16 CONFERENCE. (ECF No. 18).

On September 25, 2017, Plaintiff filed his Oppositions to Defendant's three motions. (ECF Nos. 26, 27, and 28).

On October 2, 2017, Defendant filed its Replies. (ECF Nos. 30, 31).

On October 25, 2017, the Magistrate Judge held a hearing. (ECF No. 35).

On October 30, 2017, the Magistrate Judge issued a FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT AMERICAN SAVINGS BANK, F.S.B.'S MOTION FOR Rule 41(d) COSTS AND STAY PROCEEDINGS. (ECF No. 36).

On the same date, the Magistrate Judge issued an ORDER GRANTING DEFENDANT'S MOTION TO STAY PENDING DECISION OF D.C. CIRCUIT. (ECF No. 37).

On November 13, 2017, Plaintiff filed an Objection to the Magistrate Judge's Findings and Recommendation. (ECF No. 38).

On November 27, 2017, Defendant filed its Response. (ECF No. 39).

On December 26, 2017, the Court issued its ORDER OVERRULING PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION AND ADOPTING THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT

AMERICAN SAVINGS BANK, F.S.B.'S MOTION FOR RULE 41(d) COSTS AND STAY OF PROCEEDINGS. (ECF No. 40).

On April 25, 2018, Plaintiff filed a MOTION TO LIFT THIS COURT'S OCTOBER 30, 2017 STAY PENDING THE D.C. CIRCUIT'S DECISION IN ACA INTERNATIONAL v. FEDERAL COMMUNICATIONS COMMISSION AND TO PERMIT INDIVIDUAL AND CLASS DISCOVERY TO MOVE FORWARD SIMULTANEOUSLY. (ECF No. 50).

On May 14, 2018, the Magistrate Judge filed a JOINT STIPULATION TO LIFT THE COURT'S STAY. (ECF No. 54).

On July 9, 2018, Defendant filed a Second Motion to Stay. (ECF No. 70).

On September 4, 2018, the Magistrate Judge issued an ORDER GRANTING DEFENDANT'S MOTION TO STAY CASE. (ECF No. 82).

On February 5, 2019, the Magistrate Judge lifted the stay. (ECF No. 93).

On August 29, 2019, Defendant filed its MOTION FOR SUMMARY JUDGMENT and a CONCISE STATEMENT IN SUPPORT. (ECF Nos. 112, 113).

On September 4, 2019, the Court issued a briefing schedule. (ECF No. 114).

On September 17, 2019, Plaintiff filed a MOTION FOR EXTENSION OF TIME TO FILE RESPONSE. (ECF No. 117).

On September 18, 2019, the Court issued a Minute Order granting Plaintiff's Request for an Extension of Time. (ECF No. 118).

On September 25, 2019, the Court granted Defendant's request to continue the hearing. (ECF No. 119).

On October 3, 2019, the Parties filed a JOINT MOTION TO STAY CASE PENDING COURT'S DECISION ON DEFENDANT'S PENDING MOTION FOR SUMMARY JUDGMENT AND FOR AN EXTENSION OF PRE-TRIAL AND TRIAL DEADLINES AND DATES IN THE AMENDED SCHEDULING ORDER. (ECF No. 120).

On October 16, 2019, the Court held a hearing. The Court denied the Parties' joint request. (ECF No. 126).

Also on October 16, 2019, Plaintiff filed its Opposition and Concise Statement in Opposition to Defendant's Motion for Summary Judgment. (ECF Nos. 123, 124, and 125).

On November 13, 2019, Defendant filed its Reply and Concise Statement in Reply. (ECF Nos. 132, 133).

On November 13, 2019, Defendant also filed a Second Motion for Summary Judgment. (ECF No. 128). Defendant's Second Motion for Summary Judgment is moot given the Court's ruling here, granting Defendant's first Motion for Summary Judgment.

On December 18, 2019, the Court held a hearing on Defendant's August 29, 2019 Motion for Summary Judgment (ECF No. 112). (ECF No. 146).

## BACKGROUND

**The Parties Do Not Dispute The Following Facts:**

The facts of this case are largely undisputed. Defendant American Savings Bank, F.S.B. ("American Savings Bank") is a

financial institution located in Honolulu, Hawaii. (American Savings Bank Text Banking Website, https://www.asbhawaii.com/ personal/online-banking/text-banking (last visited December 18, 2019)).

On January 12, 2012, American Savings Bank entered into an agreement to license the Monitise Mobile Banking Software in order to provide mobile banking services to its customers, including Short Message Service ("SMS") text alerting and text banking. (Declaration of Lael Martin, ("Martin Decl."), consultant for Fiserv, Inc., parent company of Monitise, the provider of Defendant's of mobile banking software, at ¶ 3, attached to Def.'s Concise Statement of Facts ("CSF"), ECF No. 113-1).

The Short Code 27244 was assigned to American Savings Bank. (Martin Decl. at ¶ 4, ECF No. 113-1). A Short Code is an abbreviated phone number that can only be used to send and receive text messages. (Id.)

American Savings Bank's Short Code mobile banking system required customers to enroll in a multi-step phone verification process in order to engage in text banking. (Id. at ¶ 6).

American Savings Bank's Short Code also provided assistance when it received text messages from non-customers. If the Short Code received a text message from a mobile number that was not enrolled in American Savings Bank's System, the System was configured to send a responsive text message. (Id. at ¶ 8). The

following Standard Non-Customer Response Message would be sent to the mobile number that initiated the message, as follows:

> ASB Hawaii Mobile
> Reply STOP to cancel alerts.  Call 800.272.2566 or go
> to www.ASBhawaii.com.  Msg freq depends on account
> settings.  Msg&data rates may apply.

(Martin Decl. at ¶ 8, ECF No. 113-1).

American Savings Bank's System was also designed to send a standard confirmatory text message in response to any text message that began with the word, "STOP."  If such a message was sent, the System would send the following Standard Unsubscribe Response Message, as follows:

> ASB Hawaii Mobile.
> You are not subscribed and will not receive alerts.
> To subscribe, call 800.272.2566 or go to
> www.ASBHawaii.com.  Reply HELP for help.

(Standard Unsubscribe Response Message, Martin Decl. at ¶ 12, ECF No. 113-1).

Plaintiff Craig Moskowitz is a resident of Connecticut.  He is not an American Savings Bank customer and did not register his phone number to engage in text banking services with American Savings Bank.  (Deposition of Craig Moskowitz, Mar. 20, 2019, at p. 85, attached as Ex. C to Def.'s CSF, ECF No. 113-6).

Plaintiff's mobile telephone number during the relevant time period was (914) 426-3033.  (Verizon Customer Agreement For Craig Moskowitz for (914) 426-3033, attached as Ex. B to Pla.'s CSF, ECF No. 124-2).

On June 1, 2016, American Savings Bank's Short Code 27244

received the following six text messages from Plaintiff's cellular telephone:

(1) "Bill Kruse for dinner and snacks," sent at 10:43 a.m.;

(2) "Rights and responsibilities of landlords and tenants in CT publication" sent at 7:56 p.m.;

(3) "Local ordinance" sent at 7:56 p.m.;

(4) "Window must meet specific requirements" sent at 7:58 p.m.;

(5) "To act as means of egress" sent at 7:58 p.m.; and,

(6) "Must be safe and habitable" sent at 8:16 p.m.

(Declaration of Naresh Bezawada ("Bezawada Decl."), Director of Support and Network Operations for Sinch, formerly Mblox, which served as the text message aggregator for Defendant's text banking service during the relevant time period, at ¶¶ 6-8, attached to Def.'s CSF, ECF No. 113-2; Records Of The Text Message Communications Sent from Plaintiff's mobile phone to American Savings Bank's Short Code, attached as Ex. A to Def.'s CSF, ECF No. 113-3).

American Savings Bank immediately responded to each of the text messages from Plaintiff's phone with its Standard Non-Customer Response Message. (Records Of The Text Message Communications Sent American Savings Bank's Short Code to Plaintiff's mobile phone, attached as Ex. B to Def.'s CSF, ECF No. 113-4).

On June 2, 2016, American Savings Bank's Short Code 27244 received two more text messages from Plaintiff's phone:

**(7)** "Quick Chek" sent at 8:53 p.m. and

**(8)** "Weight Watchers" sent at 8:54 p.m.

(Bezawada Decl. at ¶¶ 6-8; Records Of The Text Message Communications Sent from Plaintiff's mobile phone to American Savings Bank's Short Code, attached as Ex. A to Def.'s CSF, ECF No. 113-3).

American Savings Bank immediately responded to the two text messages from Plaintiff's phone with its Standard Non-Customer Response Message. (Records Of The Text Message Communications Sent American Savings Bank's Short Code to Plaintiff's mobile phone, attached as Ex. B to Def.'s CSF, ECF No. 113-4).

Twenty days later, on June 22, 2016, American Savings Bank's Short Code 27244 received a message from Plaintiff's phone stating:

**(9)** "STOP" at 11:19 p.m.

(Records Of The Text Message Communications Sent from Plaintiff's mobile phone to American Savings Bank's Short Code, attached as Ex. A to Def.'s CSF, ECF No. 113-3).

American Savings Bank immediately responded with its Standard Unsubscribe Response Message. (Records Of The Text Message Communications Sent American Savings Bank's Short Code to Plaintiff's mobile phone, attached as Ex. B to Def.'s CSF, ECF No. 113-4).

On July 1, 2016, American Savings Bank's Short Code 27244 received another affirmative message from Plaintiff's phone

number, stating:

**(10)** "802 635 7766:2e:2e:2e:2ere blue house" sent at 4:53 p.m.

(Records Of The Text Message Communications Sent from Plaintiff's mobile phone to American Savings Bank's Short Code, attached as Ex. A to Def.'s CSF, ECF No. 113-3).

American Savings Bank immediately responded to the text message from Plaintiff's phone with its Standard Non-Customer Response Message. (Records Of The Text Message Communications Sent American Savings Bank's Short Code to Plaintiff's mobile phone, attached as Ex. B to Def.'s CSF, ECF No. 113-4).

In July 3, 2016, American Savings Bank's Short Code 27244 received a final affirmative message from Plaintiff's phone, stating:

**(11)** "011103093" sent at 4:33 a.m.

American Savings Bank again immediately responded to the text message from Plaintiff's phone with its Standard Non-Customer Response Message. (Records Of The Text Message Communications Sent American Savings Bank's Short Code to Plaintiff's mobile phone, attached as Ex. B to Def.'s CSF, ECF No. 113-4).

American Savings Bank's 11 reply text messages to the messages sent directly from Plaintiff's phone are the subject of this lawsuit.

**Plaintiff's Position:**

Plaintiff claims that he never himself sent affirmative text messages to American Savings Bank and he has no idea how texts from his cell phone were sent to American Savings Bank's Short Code. (Deposition of Craig Moskowitz, March 20, 2019, at pp. 98-99, 116, 154-55, attached as Ex. A to Pla.'s CSF, ECF No. 124-1). Moskowitz admits that he sent one text message to American Savings Bank's Short Code on July 22, 2016, stating "STOP." (Id. at pp. 154-55).

Plaintiff claims that sometime later, around September 2017, he lost his cell phone. (Deposition of Craig Moskowitz, July 2, 2019, at p. 10, attached as Ex. D to Def.'s CSF, ECF No. 113-7). Plaintiff does not have complete records of the text messages sent to and received from his phone between May and July 2016. (Deposition of Craig Moskowitz, March 20, 2019, at pp. 115-16, attached as Ex. A to Pla.'s CSF, ECF No. 124-1).

There is no dispute that Plaintiff was in possession of his cellular phone during the relevant time period. Plaintiff testified in his deposition that he possessed his cellular phone the entire time the messages were sent and received from American Savings Bank. (Deposition of Craig Moskowtiz, March 20, 2019, at pp. 98, 100, 110-11, 117-18, 154-57, attached as Ex. A to Pla.'s CSF, ECF No. 124-1). Plaintiff does not contend that anyone else in his family sent the text messages. (Id.)

**Defendant's Position:**

Defendant claims that Plaintiff must have sent the messages given his involvement in numerous other lawsuits, including 15 separate class action lawsuits involving Telephone Consumer Protection Act claims.

The Parties' dispute as to who actually sent the text messages is not material to the Court's analysis.

The Parties' genuine dispute is a legal question. The dispute is limited to whether as a matter of law, a text message that American Savings Bank received from Plaintiff's cellular phone constitutes express consent to receive one text message in response.

### STANDARDS OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d

626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. Celotex, 477 U.S. at 325. The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. That burden is met by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party. State Farm Fire & Cas. Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989). Opposition evidence may consist of

declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); <u>Celotex</u>, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); <u>T.W. Elec. Serv.</u>, 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); <u>Gasaway v. Northwestern Mut. Life Ins. Co.</u>, 26 F.3d 957, 959-60 (9th Cir. 1994). When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact. <u>Hansen v. U.S.</u>, 7 F.3d 137, 138 (9th Cir. 1993); <u>see</u> <u>also</u> <u>Nat'l Steel Corp. v. Golden Eagle Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir. 1997).

## ANALYSIS

This case arises out of the Telephone Consumer Protection Act ("TCPA"), which provides, in pertinent part:

(b)(1)    It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A)    to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic dialing system or an artificial or prerecorded voice—...

(iii) to any telephone number assigned to a paging service, cellular

> telephone service, specialized
> mobile radio service, or other
> radio common carrier service, or
> any service for which the called
> party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).

The regulations implementing the TCPA provide:

> No person or entity ... may initiate, or cause to be
> initiated, any telephone call that includes or
> introduces an advertisement or constitutes
> telemarketing, using an automatic telephone dialing
> system or an artificial or prerecorded voice, to any of
> the lines or telephone numbers described in paragraphs
> (a)(1)(i) through (iii) of this section, other than a
> call made with the prior express written consent of the
> called party...

47 C.F.R. § 64.1200(a) (2).

The Parties agree that text messages constitute "telephone calls" for purposes of the TCPA. <u>Satterfield v. Simon & Schuster, Inc.</u>, 569 F.3d 946, 954 (9th Cir. 2009).

The Parties also agree that Defendant American Savings Bank received 11 text messages from Plaintiff's cellular telephone in June and July 2016.

There is no dispute that Defendant sent responsive text messages to each of the 11 text messages it received from Plaintiff's phone.

The argument concerns the scope of consent that Plaintiff provided to receive text messages from the Defendant pursuant to the Telephone Consumer Protection Act.

The Act provides for two different types of consent depending on the nature of the communication:

(1) For auto-dialer calls that constitute advertising or telemarketing: **prior express <u>written</u> consent is required**, 47 C.F.R. § 64.1200(a)(2) ; or,

(2) For any other auto-dialer calls, **prior express consent** is required, 47 U.S.C. § 227(b)(1)(A)(iii).

## I.   Prior Express <u>Written</u> Consent Was Not Required

The text messages that American Savings Bank sent to Plaintiff's cellular telephone do not constitute either "advertising" or "telemarketing" such that prior express **<u>written</u>** consent from Plaintiff was required.  47 C.F.R. § 64.1200(a)(2) (emphasis added).

A text message or call for purposes of the TCPA constitutes "advertising" and "telemarketing" if the message contains the following:

An advertisement is any material advertising the commercial availability or quality of any property, goods, or services.

47 C.F.R. § 64.1200(f)(1).

Telemarketing is the initiation of a telephone call or message for the purposes of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.

47 C.F.R. § 64.1200(f)(12).

American Savings Bank's text messages were limited to the following information:

ASB Hawaii Mobile
Reply STOP to cancel alerts.  Call 800.272.2566 or go to www.ASBhawaii.com.  Msg freq depends on account settings.  Msg&data rates may apply.

(Standard Non-Customer Response Message, Martin Decl. at ¶

8, ECF No. 113-1).

> ASB Hawaii Mobile.
> You are not subscribed and will not receive alerts.
> To subscribe, call 800.272.2566 or go to
> www.ASBHawaii.com.  Reply HELP for help.

(Standard Unsubscribe Response Message, Martin Decl. at ¶ 12, ECF No. 113-1).

The texts do not constitute either advertising or telemarketing for purposes of the TCPA.  The texts do not promote the quality of American Savings Bank's services.  The texts were not initiated by American Savings Bank to encourage the purchase or use of its services.

The messages were informative and confirmatory in nature and do not constitute "advertising" or "telemarketing" for purposes of the TCPA.  <u>Mackinnon v. HOF's Hut Restaurants, Inc.</u>, 2017 WL 5754308, at *2 (E.D. Cal. Nov. 28, 2017) (finding defendant's text message confirming plaintiff's dinner reservation was informative and not telemarketing or advertising); <u>Roberts v. PayPal, Inc.</u>, 2013 WL 2384242, at *3-*5 (N.D. Cal. May 30, 2013) (finding a responsive text by PayPal after plaintiff provided his cellular telephone number was not advertising or marketing for purposes of the TCPA), *aff'd* 621 Fed. Appx. 478, 479 (9th Cir. 2015).

Because American Savings Bank's text messages do not constitute "advertising" or "telemarketing" for purposes of the TCPA, prior express **written** consent was not required for American Savings Bank to send the text messages.  The text messages it

sent were not advertisements nor were they sent for telemarketing purposes.  47 C.F.R. § 64.1200(a)(2); <u>Mackinnon</u>, 2017 WL 5754308, at *2.

## II.  **Defendant American Savings Bank Received Prior Express Consent To Send Singular, Responsive Texts To Plaintiff's Cellular Phone**

American Savings Bank must establish that Plaintiff provided "prior express consent" to receive the text messages.  47 U.S.C. § 227(b)(1)(A)(iii); <u>Van Patten v. Vertical Fitness Group, LLC</u>, 847 F.3d 1037, 1043-44 (9th Cir. 2017).

### A.    **Express Consent Is An Affirmative Defense To The TCPA**

Express consent is not an element of plaintiff's prima facie case but it is an affirmative defense for which American Savings Bank bears the burden of proof.  <u>In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 23 F.C.C. Rcd. 559, 565 (Jan. 4 2008); <u>Grant v. Capital Mgmt. Servs., L.P.</u>, 449 Fed. Appx. 598, 600 n.1 (9th Cir. 2011).

Prior express consent is a complete defense to Plaintiff's TCPA claim.  <u>Van Patten</u>, 847 F.3d at 1044.

The TCPA does not define the term "prior express consent." The Ninth Circuit Court of Appeals has explained that the Federal Communications Commission's Orders and Rulings provide the basis for its interpretation of "prior express consent."  <u>Id.</u>

In its 1992 Order interpreting the Act, the Federal

Communications Commission ("FCC") explained that prior express consent is provided when persons knowingly release their phone numbers.  The FCC explained that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."  In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 F.C.C. Rcd. 8752, 8769 (Oct. 16, 1992).

The Ninth Circuit Court of Appeals has adopted the FCC's interpretation of prior express consent.  The Appellate Court explained that, "[w]e read the 1992 Order in a way that harmonizes with the TCPA's text and purpose, as well as the FCC's other orders and rulings.  In our view, an effective consent is one that relates to the same subject matter as is covered by the challenged calls or text messages."  Van Patten, 847 F.3d at 1044-45.  The Appellate Court went on to explain, as follows:

> The TCPA was created in response to the ever increasing consumer complaints regarding telemarketing calls. "The purpose and history of the TCPA indicate that Congress was trying to prohibit the use of [automatic dialing] to communicate with others by telephone in a manner that would be an invasion of privacy." Satterfield, 569 F.3d at 954.  Taking into account the statutory language that prior consent must be "express" and the TCPA's legislative history, we do not read the 1992 Order to mean that the FCC has determined that providing a phone number in itself means that the consumer has expressly consented to contact for any purposes whatsoever.  Instead, the consent must be considered to relate to the type of transaction that evoked it.

> Van Patten, 847 F.3d at 1045.

Other Circuits have adopted the Ninth Circuit Court of Appeals' reasoning that "an effective consent is one that relates to the same subject matter as is covered by the challenged calls or text messages." Blow v. Bijora, Inc., 855 F.3d 793, 804 (7th Cir. 2017) (upholding summary judgment in favor of the defendant where the texts plaintiff received were reasonably related to the purpose for which she provided her cell phone number).

**B.    Text Messages From Plaintiff's Cellular Telephone To Defendant Constituted Prior Express Consent To Receive Singular, Responsive Text Messages**

In this case, it is undisputed that American Savings Bank sent 11 text messages to Plaintiff's cellular telephone.  It is undisputed that the 11 text messages were sent only in response to text messages that were sent from Plaintiff's cellular telephone.

There is no dispute that the text messages were limited to single responses to texts American Savings Bank received from Plaintiff's phone.  There is no dispute that American Savings Bank did not otherwise initiate any calls or text messages to Plaintiff's cellular telephone, or otherwise attempt to contact Plaintiff about its services.

**1.    Courts Adopt A "Common Sense Approach" When Analyzing Claims Pursuant To The TCPA**

Courts consistently look to the purpose and history of the TCPA in analyzing prior express consent.  Ryabyschuck v. Citibank

(S.D.) N.A.,, 2012 WL 5379143, *2 (citing <u>Mims v. Arrow Fin.</u>
<u>Servs. LLC</u>, 132 S.Ct. 740, 745 (2012)). Courts "broadly
recognize that not every text message or call constitutes an
actionable offense; rather, the TCPA targets and seeks to prevent
'the proliferation of intrusive, nuisance calls.'" <u>Id.</u>

The Ninth Circuit Court of Appeals has emphasized that
District Courts should approach the TCPA "with a measure of
common sense." <u>Chesbro v. Best Buy Stores</u>, 705 F.3d 913, 918
(9th Cir. 2012). Following the "common sense approach", District
Courts in the Ninth Circuit have found that the TCPA does not
impose liability where the defendant sends a single, confirmatory
text. <u>Ryabyschuck</u>, 2012 WL 5379143, at *3-*4.

### 2. Single, Confirmatory or Responsive Texts To Messages Initiated By A Plaintiff Do Not Violate The TCPA

Numerous District Courts in the Ninth Circuit have held that
responsive or confirmatory text messages do not violate the
Telephone Consumer Protection Act.

In <u>Derby v. AOL, Inc.</u>, 2015 WL 3477658, *1 (N.D. Cal. June
1, 2015), the plaintiff sent a text message to America Online in
order to block a user from contacting him via its texting
service. <u>Id.</u> America Online sent a confirmatory text in
response to the plaintiff's text message that confirmed it had
blocked the user and that plaintiff opted-out of receiving such
text messages. <u>Id.</u> The District Court found that the

21

confirmation text sent by America Online did not violate the TCPA because Plaintiff had provided express consent to receive the confirmatory text. _Id._ at *7. The District Court explained that "Plaintiff's own text precipitated the confirmation text, and by texting AOL requesting to opt-out of future messages, plaintiff knowingly released his phone number to AOL and thereby consented to be texted back at that number." _Id._

Similarly, in _Ibey v. Taco Bell Corp._, 2012 WL 2401972, *1 (S.D. Cal. June 18, 2012), the plaintiff voluntarily sent a text message from his mobile phone number to the Short Code for Taco Bell in order to fill out a survey. In response to his text message, Taco Bell sent a text message with instructions on how to complete the survey. _Id._ The plaintiff decided not to complete the survey and instead texted "STOP" to Taco Bell. _Id._ In response to the STOP message, Taco Bell sent a text message confirming that plaintiff had opted out of receiving further text messages. _Id._

Again, the District Court ruled that the defendant did not violate the TCPA in sending a single, confirmatory text in response to a text message initiated by the plaintiff. _Id._ at *3. The District Court for the Southern District of California explained that "[t]o impose liability under the TCPA for a single, confirmatory text message would contravene public policy and the spirit of the statute—prevention of unsolicited telemarketing in a bulk format." _Id._; see _Holt v. Automated_

Retail, LLC, 2013 WL 12114789, *3-*4 (S.D. Cal. June 20, 2013) (finding plaintiff failed to state a claim because single, confirmatory text messages do not impose liability pursuant to the TCPA).

In Emanuel v. Los Angeles Lakers, 2013 WL 1719035, *1 (C.D. Cal. April 18, 2013), the plaintiff sent a text message to the Los Angeles Lakers Short Code to display a message on the screen of the arena during a game. In response, the Los Angeles Lakers sent a confirmatory text that it received Plaintiff's text message. Id. Plaintiff alleged the responsive text he received from the Lakers violated the TCPA because he did not provide "express consent" to receive a text message in return, but merely provided consent for his message to be displayed at the arena.

The District Court for the Central District of California rejected Plaintiff's claim. It explained that it was irrelevant that the Lakers did not inform Plaintiff that it might send a confirmation text, because "a 'common sense' reading of the TCPA indicates that, by sending his original message, Plaintiff expressly consented to receive a confirmatory text from the Lakers. 'To hold otherwise would contradict the overwhelming weight of social practice: that is, distributing one's telephone number is an invitation to be called.'" Id. at *3 (citations omitted).

The FCC has also ruled that sending a confirmation text message that does not contain marketing or promotional

information does not violate the TCPA.  In Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 27 F.C.C. Rcd. 15391, 15395-15396 (Nov. 29, 2012).

Here, common sense dictates that Defendant's confirmatory text messages sent in response to Plaintiff's initiating text messages do not violate the Telephone Consumer Protection Act. The initial text messages from Plaintiff's cellular telephone constitute express consent to receive singular, responsive text messages.  Defendant's confirmatory messages provided information in direct response to the message it received from Plaintiff's phone.  Plaintiff's initiating text messages constitute effective consent to which American Savings Bank was permitted to send responsive, confirmatory texts concerning the same subject matter.  Van Patten, 847 F.3d at 1045.

The fact that Plaintiff does not recall initiating the text messages does not alter the Court's analysis.  (Deposition of Craig Moskowitz, March 20, 2019, at pp. 98-100, attached as Ex. A to Pla.'s CSF, ECF No. 124-1).  At the hearing on October 16, 2019, Plaintiff's counsel conceded that it does not impact the case whether the Plaintiff personally sent the text messages. (Transcript of October 16, 2019 Hearing at p. 21, ECF No. 127). Plaintiff's counsel stated:

> I just wanted to clarify that we are not contesting
> that the messages came from my client's cell phone.  We
> deny that he particularly sent them; but for purposes
> of this motion, it's irrelevant.  And frankly our
> position is, for the purposes of anything else in this
> case, it's irrelevant and the intention is irrelevant.

But those are not issues on this motion.

But I just wanted to make clear that we do in our
statement of facts say that we do admit that the
messages were sent, we just say that my client himself
didn't send them.  So I just wanted to make that clear
for the record.  But that is not going to be an issue
that will prevent the Court from deciding summary
judgment — making a decision for summary judgment.
It's not going to be an issue of fact that's relevant.

(Id. at pp. 21-22).

Plaintiff also concedes that no third-party sent text

messages from his phone and that it remained in his possession

during the relevant conduct period.  (Deposition of Craig

Moskowitz, March 20, 2019, at pp. 97-98, 100, 110-11, 117-18,

154-57, attached as Ex. A to Pla.'s CSF, ECF No. 124-1).

Plaintiff's reliance on Brown v. DirecTV, 2018 WL 8647716,

*4 (C.D. Cal. Oct. 26, 2018), is unpersuasive.  Brown is both

factually and legally distinguishable.  It involved five

telephone calls relating to a customer's installation and

maintenance of his satellite television device.  The contacts did

not involve single text messages which received singular,

confirmatory responses.

Plaintiff's argument regarding the "capture" of his phone

number is also unpersuasive.  Plaintiff relies on language from

the FCC decision from 1991 regarding the capture of numbers from

telephone calls.  See In re Rules & Regulations Implementing the

Telephone Consumer Protection Act of 1991, 7 F.C.C. Rcd. 8752,

8769 (Oct. 16, 1992).  The context of that ruling was to prevent

companies from "capturing" a telephone number from a Caller ID

system and then using that number to harass an individual at his residence about matters that were outside of the purpose for the individual's call.  The Ninth Circuit Court of Appeals has explained that the issue raised concerning the capture of phone numbers was based on concerns as to the scope of the consent provided by the customer.  "[T]he called party has in essence requested the contact by providing the caller with their telephone number for <u>use in normal business communications.</u>"  <u>Van Patten</u>, 847 F.3d at 1045 (citing 7 F.C.C. Rcd. at 8769 n.57) (emphasis in original).  A violation of the TCPA only occurs where the company exceeds the scope of the prior express consent given when the party provides its phone number for normal business communications.  There is no violation when there is a call or text within the context of the parties' transaction because "a consumer consents to contact for transaction-related communications when the consumer provides his or her phone number to the caller."  <u>Id.</u>  Plaintiff's reliance on the language from the 1991 order, which was made at a time when text messaging technology did not even exist, is not persuasive.

The persuasive authorities from the federal district courts in the Northern, Central, and Southern Districts of California support the Court's finding here that there was prior express consent for American Savings Bank to send singular, confirmatory text messages.  As held in <u>Derby</u>, 2015 WL 3477658, at *7, <u>Emanuel</u>, 2013 WL 1719035, at *3-*4, <u>Ibey</u>, 2012 WL 2401972, at *3,

and Holt, 2013 WL 12114789, at *3-*4, a single, confirmatory text message sent in direct response to a text message sent from the plaintiff's phone is not actionable pursuant to the TCPA.  The "imposition of liability under the TCPA for a single, confirmatory text message would constitute an impermissible 'absurd and unforseen result.'"  Ryabyschuck, 2012 WL 5379143, at *3-*4 (citing Henrique v. U.S. Marshal, 653 F.2d 1317, 1320 (9th Cir. 1981) ("the Court must recognize the common sense practicalities of the situation presented.")).

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

Defendant American Savings Bank, F.S.B.'s Motion for Summary Judgment filed on August 29, 2019 (ECF No. 112) is **GRANTED.**

Defendant American Savings Bank, F.S.B.'s Second Motion for Summary Judgment filed on November 13, 2019 (ECF No. 128) is **MOOT.**

The Clerk of Court is **DIRECTED** to enter Judgment in favor of the Defendant and to **CLOSE THE CASE.**

IT IS SO ORDERED.

DATED: January 6, 2020, Honolulu, Hawaii.



Helen Gillmor
United States District Judge

Craig Moskowitz v. American Savings Bank, F.S.B., Civ. No. 17-00299 HG-RT; **ORDER GRANTING DEFENDANT AMERICAN SAVINGS BANK, F.S.B.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 112)**